UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ALLAN ARSICH, | No. 2:13-cv-0741-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 25, 2007, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (ECF No. 19.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 21, 24.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c).  (ECF Nos. 7, 9.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.   BACKGROUND

Plaintiff was born on February 10, 1976; has a regular high school diploma with a few college credits, although he primarily attended special education classes; is able to communicate in English; and has no past relevant work, except for a couple of temporary jobs with no significant earnings.[2]  (Administrative Transcript ("AT") 85, 89, 226, 426-27, 442-43.)  When plaintiff was in his late teens, he apparently received SSI benefits primarily due to attention deficit hyperactivity disorder ("ADHD"), but subsequently lost the benefits when he was incarcerated from 2000-2007 for a violation of California Penal Code section 288(a), based on plaintiff's molestation of his nine-month old biological daughter.  (AT 43, 224-28, 443-44.)  He was then on parole until approximately September of 2010.  (AT 43.)

On May 25, 2007, at around age 31, plaintiff applied for SSI, alleging that he was unable to work as of May 17, 2007, due to a right hip replacement in 1995, mental retardation, an adjustment disorder, and ADHD.  (AT 85, 128, 140, 145, 147, 262, 307.)  On September 13, 2007, the Commissioner determined that plaintiff was not disabled.  (AT 85, 90-94.)  Upon plaintiff's request for reconsideration, the determination was affirmed on January 25, 2008.  (AT 89, 95-99.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which ultimately took place on July 7, 2009, and at which plaintiff (represented by an attorney), plaintiff's mother, and a vocational expert ("VE") testified.  (AT 28-84.)  In a subsequent decision dated December 7, 2009, ALJ Daniel Heely determined that plaintiff had not been under a disability, as defined in the Act, since May 25, 2007, the date that plaintiff's SSI application was filed.  (AT 15-23.)  After the Appeals Council denied plaintiff's request for review of ALJ Heely's decision on June 15, 2011, plaintiff appealed the Commissioner's decision to this court

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1  on August 2, 2011.  (AT 1-6); Arsich v. Commissioner, 2:11-cv-2046-GGH (E.D. Cal.).

2        Subsequently, on February 10, 2012, this court remanded the case for further proceedings
3  pursuant to sentence four of 42 U.S.C. § 405(g) based on the parties' stipulation to a voluntary
4  remand.  Arsich v. Commissioner, 2:11-cv-2046-GGH (E.D. Cal.), ECF Nos. 18-19.  As part of
5  the proceedings on remand, a supplemental hearing was conducted on November 2, 2012, before
6  ALJ Maxine R. Benmour, at which plaintiff (represented by counsel), plaintiff's mother, and a
7  VE testified.  (AT 438-74.)  Then, in a decision dated December 17, 2012, ALJ Benmour again
8  determined that plaintiff had not been under a disability, as defined in the Act, since May 25,
9  2007, the date that plaintiff's SSI application was filed.  (AT 419-28.)[3]  Ultimately, plaintiff
10 commenced this action in federal district court on April 15, 2013, to obtain judicial review of the
11 Commissioner's final decision.  (ECF No. 1.)

12 II.    ISSUES PRESENTED

13       Plaintiff has raised the following issues: (1) whether the ALJ erroneously discounted the
14 opinion of plaintiff's treating physician; (2) whether the ALJ improperly discounted plaintiff's
15 credibility; and (3) whether the ALJ failed to properly consider the lay testimony of plaintiff's
16 mother.[4]

17 III.    LEGAL STANDARD

18       The court reviews the Commissioner's decision to determine whether (1) it is based on
19 proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record
20 as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial
21 evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

---

[3] At the hearing before ALJ Benmour, plaintiff amended his alleged onset date to December 31, 2000.  (AT 441.)  However, as the ALJ noted, although she considered plaintiff's complete medical history, SSI is not payable prior to the month following the month in which the application was filed.  (AT 420.)  See 20 C.F.R. § 416.335.  At the administrative hearing, plaintiff's counsel suggested that because plaintiff's prior SSI benefits were discontinued due to incarceration, there had been no cessation of plaintiff's impairment.  (AT 441-42.)  Plaintiff's briefing before this court does not raise such an argument, nor has plaintiff argued that a legal standard other than the conventional standard for new SSI applications applies in this case.  As such, any argument to that effect is waived.

[4] Plaintiff's motion sets forth the issues in a slightly different order.

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

   A.   Summary of the ALJ's Findings

ALJ Benmour evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[5] At the first step, the ALJ concluded that plaintiff had

---

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

   Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

////

4

1  not engaged in substantial gainful activity since May 25, 2007, the date that plaintiff's SSI

2  application was filed.  (AT 421.)  At step two, the ALJ determined that plaintiff had the following

3  severe impairments: residuals of right hip replacement, depression, anxiety disorder, personality

4  disorder, obesity, and borderline intellectual functioning.  (Id.)  However, at step three, the ALJ

5  determined that plaintiff did not have an impairment or combination of impairments that met or

6  medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

7  Appendix 1.  (AT 422.)

8      Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

9  ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and can sit for six hours and stand and/or walk for six hours in an eight-hour workday.  He can stand and/or walk for one hour at a time and needs to sit and rest for one to two minutes.  He can occasionally climb, balance, stoop, kneel, crouch, and crawl.  He is limited to simple, repetitive tasks with no contact with the public.  He cannot do any work that involves money.  He requires close supervision, defined as a supervisor checking his work once per hour during the workday.

17 (AT 423.)

18      At step four, the ALJ found that plaintiff had no past relevant work.  (AT 426.)  Finally, at

19 step five, the ALJ determined, in reliance on the VE's testimony, that considering plaintiff's age,

20 education, work experience, and RFC, there were jobs that existed in significant numbers in the

21 national economy that plaintiff could perform.  (AT 427.)  Specifically, the VE testified that

22 plaintiff would be able to perform the representative occupations of silver wrapper (with 28,000

23 positions in the California economy and 214,000 positions in the national economy) and order

24 caller (with 1,700 positions in the California economy and 15,800 positions in the national

25 economy).  (AT 427, 469-70.)  The VE also testified that these representative occupations could

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5

still be performed even if plaintiff were further restricted to being in direct line of sight of a supervisor with the supervisor available to answer questions.  (AT 471.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from May 25, 2007, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (AT 428.)

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.      Whether the ALJ erroneously discounted the opinion of plaintiff's treating physician

Plaintiff argues that the ALJ erred in discounting the opinion of plaintiff's treating physician, Dr. Christopher Cody.  That argument is unpersuasive.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

////

////

weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

Here, on April 13, 2011, plaintiff established care with Dr. Cody at Solano County Health and Social Services, who noted plaintiff's ongoing effort to again obtain SSI benefits. (AT 597.) That same day, Dr. Cody completed a one-page disability report for purposes of county general assistance benefits, opining that plaintiff was totally and permanently disabled based on diagnoses of status post total right hip replacement and "reported ADHD," and listing the clinical findings supporting disability as "gait changes." (AT 588, 616.) Subsequently, on February 15, 2012, Dr. Cody indicated on a virtually identical form that plaintiff had a temporary partial disability (i.e., was able to perform limited or restricted work), and that the temporary disability was expected to end by February 29, 2012. (AT 606.) That form contained no diagnoses or clinical findings at all. (<u>Id.</u>) Then, on April 18, 2012, Dr. Cody completed a similar one-page form, assessing plaintiff as partially disabled and only capable of doing sedentary work for less than 8 hours per day. (AT 605.) That assessment was based on a diagnosis of status post total hip replacement, which Dr. Cody opined was a chronic condition with an onset date of 2011. (<u>Id.</u>) The clinical findings supporting the assessment were listed as "range of motion of hip decreased." (<u>Id.</u>) Dr. Cody ostensibly declined to complete the portion of the form asking whether plaintiff appeared to have a disability lasting 12 months or more for purposes of a potential SSI claim. (<u>Id.</u>)

The ALJ justifiably gave Dr. Cody's cursory opinions little weight, because they were conclusory and minimally supported. <u>Meanel</u>, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. As the ALJ

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

observed, Dr. Cody listed "gait changes" as the only clinical finding supporting the assessment of total and permanent disability on April 13, 2011. (AT 425, 588, 616.) His subsequent February 15, 2012 assessment contained no clinical findings at all, and the final April 18, 2012 assessment only listed a clinical finding of decreased hip range of motion. (AT 605-06.) Such minimal and vague clinical findings are woefully insufficient to support a proper medical opinion, let alone a medical opinion that plausibly establishes disability for purposes of SSI benefits.

The ALJ also noted that Dr. Cody did not actually treat plaintiff for right hip pain or ADHD. (AT 425.) With respect to the hip pain, although Dr. Cody apparently at one point referred plaintiff for an unspecified orthopedic evaluation (AT 596, 617), the records from Dr. Cody's clinic do not document any specific treatment of plaintiff's hip by Dr. Cody, and reveal that Dr. Cody primarily treated plaintiff for other physical impairments such as acid reflux, wrist pain, hypertension, and smoking cessation, which are not alleged to be disabling impairments. (AT 570-621.)

As for ADHD, the express language of Dr. Cody's April 13, 2011 assessment indicates that the ADHD diagnosis was based on plaintiff's own self-reporting, and a social worker affiliated with Dr. Cody's clinic specifically informed plaintiff that the clinic did not treat ADHD. (AT 595.) The ALJ noted that plaintiff received some treatment for ADHD as an adult while in prison. (AT 425-26.) However, in a March 23, 2007 California Department of Mental Health evaluation by psychologist Diane Sommers, who reviewed plaintiff's records and personally conducted a clinical mental status examination, Dr. Sommers notably opined that plaintiff "by history, has been labeled with ADHD; however, he has not exhibited symptoms consistent with this disorder while in prison." (AT 226.) Furthermore, even though the records from Dr. Cody's clinic indicate that plaintiff received some treatment for depression, anxiety, and insomnia, the treatment notes documented mostly mild to moderate findings, with generally effective control by medication. (AT 576-77, 579, 595.) These findings are largely consistent with prison records, which show that as of 2006-2007, plaintiff's mental health was mostly stable with better sleep, improved mood, no mild transient depression, and a normal range of emotional display. (AT

////

225.)[7]

Additionally, in discounting Dr. Cody's opinion and formulating plaintiff's RFC, the ALJ properly relied on several other opinions in the record.

The ALJ gave substantial weight to the opinion of consultative examiner and board certified physical medicine and rehabilitation specialist, Dr. Madelaine Aquino, who examined plaintiff on August 23, 2007, and reviewed his records. (AT 262-65, 425.) Dr. Aquino noted plaintiff's hip fracture and related surgery in 1995, and observed that plaintiff ambulated with a slight limp to the right side, but otherwise had a normal gait pattern; was able to sit comfortably during the examination; had no problem getting on and off the exam table; and was able to heel, toe, and tandem walk without difficulty. (AT 262-64.) Dr. Aquino opined that plaintiff could stand and walk about 6 hours in an 8-hour workday, with no continuous walking more than 1 hour at a time; could sit without restriction; had no lifting limitations; and could only occasionally bend or crawl. (AT 265.)

Because Dr. Aquino personally examined plaintiff and made independent clinical findings, her opinion constitutes substantial evidence on which the ALJ was entitled to rely. Moreover, Dr. Aquino's opinion is consistent with the results of objective radiological testing performed. For example, a June 12, 2006 x-ray of plaintiff's right hip and pelvis, referenced by Dr. Aquino, showed stable hardware and alignment, and no significant degenerative changes. (AT 200.) On August 25, 2008, x-rays of plaintiff's right hip showed no acute abnormality. (AT 630.) A subsequent October 22, 2008 MRI of plaintiff's right hip likewise showed no significant abnormality, although the study was noted to be somewhat obscured and distorted by the

---

[7] Plaintiff's briefing heavily emphasizes plaintiff's earlier school records and evaluations performed in the 1980s-1990s. However, even though the ALJ was required to, and did, consider the entire record (AT 420), the ALJ justifiably gave greater weight to the more recent evidence concerning plaintiff's mental impairments as an adult. (AT 424-26.) Moreover, some of the evidence from plaintiff's childhood is not indicative of disabling mental limitations. For example, on September 14, 1993, when plaintiff was in high school, Dr. Robert Buley, a clinical psychologist who personally evaluated plaintiff and administered intelligence testing, opined that plaintiff's "profile is not typical of a person with significant learning disabilities, but rather of borderline intellectual functioning," noting that "[p]eople of similar intellectual abilities are able to do minimal skilled and even semi-skilled work as adults." (AT 314-17.)

9

1  hardware in plaintiff's hip.  (AT 625.)

2  The ALJ also gave some weight to the assessments of the state agency physicians.  (AT 425-26.)  On September 10, 2007, state agency physician Dr. Dann reviewed plaintiff's records and opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit about 6 hours in an 8-hour workday; stand and/or walk about 6 hours in an 8-hour workday; stand and/or walk up to 1 hour at a time with 1-2 minutes in between to sit or rest; and occasionally climb, kneel, crouch, or crawl.  (AT 266-70.)  Dr. Dann observed that while plaintiff had a medically determinable impairment of his right hip, he found plaintiff only partially credible, because Dr. Aquino's exam and the objective imaging studies did not support the degree of impairment alleged.  (AT 270.)  Furthermore, on August 17, 2007, state agency psychiatrist Dr. Loomis reviewed plaintiff's records and opined that plaintiff "is capable of understanding, remembering and carrying out simple repetitive tasks.  The claimant is able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple tasks.  The claimant is able to interact adequately with coworkers/supervisors but may have difficulty dealing with the demands of general public contact.  The claimant is able to make adjustments and avoid hazards in the workspace."  (AT 258.)

The ALJ legitimately gave some weight to the state agency physicians' assessments, because they were generally consistent with other evidence in the record, as discussed above. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

In light of the above, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Cody's opinion.[8]

////

---

[8] The court finds it unnecessary to consider plaintiff's argument that the ALJ improperly discounted Dr. Cody's assessment of disability as an opinion on an issue reserved to the Commissioner, because, even assuming *arguendo* that this was error, the ALJ provided several other specific and legitimate reasons for discounting Dr. Cody's opinion.

2. <u>Whether the ALJ improperly discounted plaintiff's credibility</u>

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (<u>quoting</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (<u>quoting</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." <u>Id.</u> at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's subjective allegations. Indeed, as noted above, the ALJ imposed significant physical and mental

limitations resulting in a substantially reduced range of light work. (AT 423.) For example, in light of his right hip impairment, plaintiff was restricted to standing and/or walking for only 1 hour at a time, with the need to sit and rest for 1-2 minutes in between. (Id.) Furthermore, given plaintiff's borderline intellectual functioning and alleged problems with focus, concentration, memory, impulse control, and completing tasks, the ALJ limited plaintiff to simple, repetitive tasks involving no public contact, no handling of money, and close supervision (with a supervisor checking his work once per hour during the workday). (Id.) As the VE also testified, the representative occupations chosen based on the ALJ's ultimate RFC could still be performed even if plaintiff were further restricted to being in direct line of sight of a supervisor with the supervisor available to answer questions. (AT 471.)

Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding the degree of his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

The ALJ found that the weight of the medical evidence did not support plaintiff's claims of limitations to the disabling degree alleged. (AT 424-26.) For the reasons discussed above, that finding is supported by substantial evidence. To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). But even though lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

The ALJ also reasonably found that plaintiff's allegations of disabling limitations were undermined by the relatively limited and/or conservative treatment of his physical and mental impairments. (AT 424-26.) See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

As to plaintiff's hip impairment, plaintiff told consultative examiner Dr. Aquino on August 23, 2007, that he was not taking any medications or receiving any active treatment at that time. (AT 262.) The record indicates that plaintiff was evaluated at San Joaquin General Hospital orthopedic clinic for right hip pain in 2008, and was given an injection, instructed to perform daily exercises, and told to take Motrin or aspirin for pain as needed. (AT 631-32.) At the July 7, 2009 hearing before ALJ Healy, plaintiff stated that he did not get treatment from a particular doctor for his physical problems and that he had stopped taking his pain medication, because "well, they just ran out and I didn't see a need to go back to the doctors." (AT 47.) At the subsequent November 2, 2012 hearing before ALJ Benmour, plaintiff testified that he was taking some pain medication, but confirmed that he had not received any recent treatment for his hip since the fairly limited treatment at San Joaquin General Hospital. (AT 446-49.)

With respect to plaintiff's alleged ADHD, the record does not contain evidence of any substantial treatment for ADHD after plaintiff's SSI application was filed. (AT 424, 425-26.) To be sure, in some mental impairment cases it may be inappropriate to discount a claimant's credibility based on the claimant's failure to seek treatment for the mental impairment, such as when the claimant lacks the capacity to seek treatment, or resources for treatment are not available. However, in this case, plaintiff had access to, and did seek, treatment for some of his mental impairments, including depression and anxiety. Moreover, he was given the option to pursue available treatment for his alleged ADHD with Catholic Social Services, but the record contains no indication that plaintiff actually pursued treatment there. (AT 595.) Furthermore, as noted above, the treatment notes from Dr. Cody's clinic documented mostly mild to moderate findings regarding plaintiff's other mental health impairments, with generally effective control by medication. (AT 576-77, 579, 595.)

Finally, the ALJ rationally concluded that plaintiff's activities were not limited to the extent one would expect given complaints of disabling symptoms and limitations. (AT 422.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting ... Even where those

activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

In this case, plaintiff testified that he could walk for approximately an hour before he needed a 2-3 minute break, could stand in one place for about an hour, and could lift about 20 pounds. (AT 454.) He further testified that he took care of his own hygiene, drove himself to doctor's appointments, and did household chores, including cleaning his room, washing dishes, mopping the floor, and doing laundry. (AT 422, 455-56.) Plaintiff did not cook often or do grocery shopping at the time of the hearing before ALJ Benmour, because he then lived with his parents who performed those functions (AT 455), but he had previously shopped for groceries and prepared simple meals when living on his own, with some menu planning assistance from his mother. (AT 53-54, 151-54.) In a third-party function report, plaintiff's mother indicated that plaintiff used public transportation, rode a bicycle, went to the library and the movies, talked on the phone, read, watched television, played videogames, looked for a job, did yard work, did not need reminders taking medicine, could pay bills, could count change, and could handle a savings account. (AT 151, 153-55.) Plaintiff himself confirmed that he frequently rode a bicycle during the relevant period, which is confirmed by numerous medical records. (AT 40, 46-47, 162, 631 ["The patient states the pain is worse on riding his bike and it has been bothering him for the last couple of years."], 633 ["The patient does not have any acute issues except for the fact that he gets off and on pain in the right hip, particularly when he spends a lot of time on his bike"].) Additionally, around January 2012, plaintiff, with Dr. Cody's support, applied for a free sport fishing license. (AT 608.)

To be sure, plaintiff also points to some contrary evidence, suggesting that plaintiff's activities may be more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

For these reasons, the court finds that the ALJ's evaluation of plaintiff's credibility is supported by substantial evidence in the record as a whole.[9]

3. <u>Whether the ALJ failed to properly consider the lay testimony of plaintiff's mother</u>

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted).

Here, the ALJ specifically discussed the statements and testimony of plaintiff's mother, clearly indicating that the ALJ had considered the information for purposes of assessing plaintiff's RFC. (AT 422, 424.) Nevertheless, the ALJ ultimately found that the record as a whole did not support plaintiff's mother's opinion that plaintiff "needs to be in a sheltered

---

[9] Plaintiff's briefing criticizes some of the other reasons that the ALJ ostensibly used to discount plaintiff's credibility. However, even assuming, without deciding, the existence of some error, such error was harmless, because the ALJ also provided several valid reasons for discounting plaintiff's credibility. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

15

workshop" beyond the limitations already assessed in the RFC. (AT 424.) As discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony. These reasons (in particular, the weight of the medical evidence, limited and/or conservative treatment, and plaintiff's activities), are equally germane to the testimony of plaintiff's mother.

Any error in not explicitly re-stating or linking the reasons given for discounting plaintiff's testimony with respect to discounting plaintiff's mother's testimony was harmless, and remand is not warranted. See Molina, 674 F.3d at 1115-22; see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

## V. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is denied.
2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted.
3. Judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: July 28, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE